UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ERNEST FRANKLIN CLARK,

    Petitioner,

       v.                       Civil No. 15-cv-726-JPG

UNITED STATES OF AMERICA,      Criminal No 11-cr-30-2-JPG

    Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Ernest F. Clark's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Clark appeared *pro se* at trial with standby counsel. On February 24, 2012, a jury found Clark guilty of several counts of both armed robbery, in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d), and use of a firearm in a violent crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii). (Case No. 11-CR-30, Doc. 171). Several months later, on July 9, 2012, the Court sentenced Clark to serve a total of 1,951 months in prison followed by a 5-year term of supervised release. (Case No. 11-CR-30, Doc. 189). Clark appealed his conviction and sentence (Doc. 191); the Seventh Circuit affirmed the Court's judgment (Case No. 11-CR-30, Doc. 237). Clark then filed the timely § 2255 motion now before the Court. (Doc. 1). The Court directed briefing on Clark's § 2255 motion (Doc. 4, 7), and briefing is now complete (Doc. 15, 18). Clark's § 2255 motion rests primarily on his assertion that his appellate counsel was ineffective in the following ways:

(1)    not appealing this Court's denial of his Rule 29 motion (Doc. 1 at 6-7);

(2)    not appealing this Court's denial of his "Motion to Dismiss for violation of the Sixth Amendment Right to Speedy Trial" (Doc. 1 at 7);

(3)    not appealing the "structural error" that resulted from this Court's having conducted certain proceedings in the trial via speakerphone (Doc. 1 at 8);

(4)    not appealing the "denial of a Fair trial" (Doc. 1 at 8-9);

(5)     failing to "cite the controlling Seventh Circuit precedent in his opening brief" (Doc. 2 at 2-9);

(6)     failing to pursue the following "significant and obvious issues":

    a.  lack of probable cause at the time of Clark's arrest, resulting in the illegal collection of Clark's DNA (Doc. 2 at 10-16);

    b.  issuance of a search warrant "founded upon deliberate falsehoods and misleading omissions" (Doc. 2 at 16-25);

    c.  deprivation of due process resulting from errors in the grand jury proceedings (Doc. 2 at 26-32 (Clark has stated two separate but seemingly related grounds in this regard, both of which point to errors resulting from the alleged failure to provide evidence of FDIC insurance status to the grand jury));

    d.  sufficiency of the evidence regarding FDIC insurance (Doc. 2 at 32-37);

    e.  constructive amendment to the Indictment (Doc. 2 at 38-45);

    f.  unreasonable sentence (Doc. 2 at 58-59);

    g.  "lies" of government counsel (Doc. 2 at 45-50);

    h.  failure to promptly present Clark before a magistrate judge (Doc. 2 at 50-58 (Clark has stated two separate claims relating to presentment before a Magistrate Judge, both of which relate to Rule 5 of the Federal Rules of Criminal Procedure)); and

(7)     failing to object to improper charging language in the Indictment (Doc. 8 at 1-4 (it is unclear whether Clark is asserting this as a stand-alone ground or through the lens of a challenge to his appellate counsel's performance, as the Court will discuss in further detail)).

Having reviewed each of these grounds for relief, the Court has determined that none are meritorious, and therefore the Court will deny Clark's § 2255 motion. The Court begins providing the applicable standards governing § 2255 motions (Part I, *infra*) before analyzing the merits of Clark's motion (Part II, *infra*). The Court will assume the reader's familiarity with the underlying factual and procedural history, together with the Seventh Circuit's decision on direct appeal, *United States v. Clark*, 754 F.3d 401 (7th Cir. 2014). Where necessary, the Court will provide background in discussing each of Clark's specific claims. The Court will also address in a separate section (Part III, *infra*) Clark's recently-filed motion to supplement his § 2255 motion.

2

## I.     § 2255 Standards

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)), *cert. denied*, 135 S. Ct. 1574 (2015). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Clark's asserted grounds for relief arise almost exclusively[1]  under the Sixth Amendment's guarantee of effective assistance of counsel on his direct appeal. *See, e.g.*, *Vinyard v. United States*, 804 F.3d 1218, 1224-25 (7th Cir. 2015) (citing *Strickland v. Washington* 466 U.S. 668, 684-86 (1984); *Evitts v. Lucey*, 469 U.S. 387 (1985); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). "Under the familiar two-pronged test of *Strickland*, [Clark] must show both that his attorney's performance was deficient and that he was prejudiced as a result." *Vinyard*, 804 F.3d at 1225 (citing *Arrington v. Richter*, 562 U.S. 86, 104 (2011); *Carter v. Douma*, 795 F.3d 726, 735 (7th Cir. 2015)).

To satisfy *Strickand*'s first prong—requiring that appellate counsel's performance was deficient—Clark must establish that "the representation his attorney provided fell below an

---

[1]  The only exception is his ground regarding the language of the Indictment, which the Government believes to be a standalone ground (Doc. 15 at 38), as the Court will discuss further.

3

objective standard of reasonableness." *Vinyard*, 804 F.3d at 1225 (citing *Strickland*, 466 U.S. at 688; *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002)). This is a highly deferential standard; the Court will deem Clark's appellate counsel's assistance deficient only if it determines that he failed to "argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 897-98 (7th Cir. 2015) (citing *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010); *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003)). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898 (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)). Moreover, the failure to raise meritless claims cannot constitute deficient performance. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013).

To satisfy *Strickland*'s second prong—prejudice resulting from appellate counsel's performance—Clark must establish that there is "a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (quoting *Lee*, 328 F.3d at 901, which states the standard in a somewhat heightened fashion: "Prejudice is established if the issue not raised 'may have resulted in a reversal of the conviction or an order for a new trial." (internal quotations omitted)). "This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee*, 328 F.3d at 901.

Finally, the Court provides the standard applicable to the issuance or denial of a certificate of appealability. Under Rule 11 of the Rules Governing Section 2255, the Court is obliged to "issue or deny a certificate of appealability when it enters a final order adverse to the

4

applicant." A petitioner is not entitled to a certificate of appealability unless he makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If the Court grants a certificate of appealability, it must "indicate which specific issue or issues" the certificate of appealability covers. 28 U.S.C. § 2253(c)(3). Clark has raised a substantial number of issues. Therefore, the Court will address the issuance of a certificate of appealability at the end of its analysis of each of those issues.

## II.     Analysis

### A.      Failure to Appeal Denial of Rule 29 Motion

At the close of the Government's case in chief, Clark moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, arguing that the Government's evidence was insufficient to sustain a conviction. (Doc. 200 at 623:15—624:11). Clark did not specify any basis for that motion. Instead, Clark simply stated, "Correct," in response to the Court's question, "Are you also making a motion to dismiss at the close of the Government's case because they haven't made a prima facie showing?" (*Id.*) The Court denied Clark's Rule 29 motion, stating that it "f[ound] that the Government ha[d] established enough evidence to proceed further with this case, ha[d] made a prima facie showing." (*Id.*)

Clark's appellate attorney did not appeal the Court's denial of that motion, and Clark now asserts that the failure to do so was constitutionally ineffective assistance of counsel. Specifically, Clark argues that the Government did not prove that he had advance knowledge that

5

his co-actor Robin Arnold was going to use a gun in connection with several of the armed robberies, thus undermining Clark's § 924(c) convictions. (Doc. 1 6-7; Doc. 18 at 1-6 (also raising argument regarding language of § 924(c) counts in Indictment, which charged him with "us[ing] and brandish[ing] a firearm in furtherance of a crime of violence"; this relates to Clark's seventh ground for relief, raised in his supplemental brief, so the Court will deal with it in connection with addressing that ground)).[2]

The Indictment charged Clark with six separate counts of knowing use and brandishment of a firearm in furtherance of a crime of violence, in violation of §§ 2 and 924(c)(1)(A)(ii):

 (1) Count Two, which related to the October 27, 2008, robbery of U.S. Bank charged in Count One (Case No. 11-CR-30, Doc. 1 at 1-2);

 (2) Count Five, which related to the October 23, 2009, robbery of Bank Mutual charged in Count Four (*id.* at 5-6);

 (3) Count Seven, which related to the November 4, 2009, robbery of National City Bank charged in Count Six (*id.* at 7-8);

 (4) Count Nine, which related to the November 21, 2009, robbery of Maritime Savings Bank charged in Count Eight (*id.* at 9-10);

 (5) Count Thirteen, which related to the February 17, 2010, robbery of Anchor Bank charged in Count Twelve (*id.* at 13-14); and

 (6) Count Sixteen, which related to the August 18, 2010, robbery of Pyramax Bank charged in Count Fifteen (*id.* at 17-18).

At trial, the Government asserted that, as to the first five of those counts—Counts Two, Five, Seven, Nine, and Thirteen— Clark entered the banks with Arnold, who held the gun. The Government argued that Clark was guilty of § 924(c)(1)(A)(ii) because he aided and abetted the use of the firearm; that is why the Government included § 2 in those charges. Clark now argues

---

 [2] In its brief in opposition, the Government addresses Clark's sufficiency-of-the-evidence challenge to his robbery convictions in the same section as his 18 U.S.C. § 924(c) challenge. (*See* Doc. 15 at 11-12). Clark originally raised the robbery issue as a sub-argument to his sixth ground for relief (counsel's alleged failure to raise multiple "significant and obvious" issues on appeal), so the Court will address it in that context.

that the Government did not prove that he had advance knowledge that Arnold would use a gun during the robberies as required to find guilt for aiding and abetting a § 924(c) violation, under *Rosemond v. United States*, 134 S.Ct. 1240 (2014). (*See* Doc. 1 at 6-7; Doc. 18 at 1-6).

The Supreme Court issued *Rosemond* while Clark's appeal was pending before the Seventh Circuit; *Rosemond* holds that "[a]n active participant in a [crime] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." 134 S.Ct. at 1249. Going further, the Supreme Court noted that:

> the § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. … For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably opt to walk away.
>
> …
>
> By virtue of § 924(c), using a firearm at a [crime] ups the ante. A would-be accomplice might decide to play at those perilous stakes. Or he might grasp that the better course is to fold his hand. What he should not expect is the capability to hedge his bets, joining in a dangerous criminal scheme but evading its penalties by leaving use of the gun to someone else. Aiding and abetting law prevents that outcome, so long as the player knew the heightened stakes when he decided to stay in the game.

*Id.* at 1249-50. The Supreme Court rejected the Government's position that this foreknowledge requirement would be "met whenever the accomplice, having learned of the firearm, continues any act of assisting the drug transaction." *Id* at 1250-51. In doing so, the Supreme Court pointed out that the Government's suggestion—essentially, requiring a defendant to run away from a

Case 2:15-cv-00726-JPG   Filed 03/04/16   Page 7 of 55   Document 21

crime upon learning of the use of a gun—might increase the danger of the situation. *Id.* at 1251.

Nonetheless, the Supreme Court pointed out that "if a defendant continues to participate in a

crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his

failure to object or withdraw that he had such knowledge. In any criminal case, after all, the

factfinder can draw inferences about a defendant's intent based on all the facts and circumstances

of a crime's commission." *Id.* at 1250 n. 9.

At this stage, the Court is called upon to determine only whether Clark's appellate

counsel was ineffective in failing to appeal the Court's denial of Clark's motion for acquittal on

the basis of insufficient evidence in light of *Rosemond.*[3] "When faced with a challenge to the

---

[3] The Government also argues that appellate counsel's failure to challenge the jury instructions on appeal was not ineffective. (Doc. 15 at 8). It has done so despite Clark's failure to explicitly raise the argument in his § 2255 motion (*see* Doc. 1), likely in an attempt to address any possible argument that Clark could have raised. So, the Court does not believe that this ground is even properly before it.

Nonetheless, to the extent that the argument is before the Court, it is subsumed by the Court's analysis of the sufficiency-of-the-evidence ground. Clark did not challenge the jury instructions at trial; in fact, the Court used the precise instruction suggested by Clark. (Doc. 159, 169). Therefore, on appeal, the Seventh Circuit would have reviewed the jury instructions for plain error. *See, e.g.*, Fed. R. Cr. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 465-67 (1997). In order to have reversed for plain error, the Seventh Circuit would have to have found "(1) error (2) that is plain, and (3) that affects the defendant's substantial rights." *United States v. Hamad*, 809 F.3d 898, 904 (7th Cir. 2016) (citations omitted). "An error is plain if it is clear or obvious," *id.* (citing *United States v. Olano*, 507 U.S. 725, 731 (1993); *United States v. Raney*, 797 F.3d 454, 462 (7th Cir. 2015)), and can be so even if the trial court's decision was correct when it was made but later became incorrect based on a change in law, *Johnson*, 520 U.S. at 468. But, to find that a plain error affected a defendant's substantial rights, the trial court must generally find that the error prejudiced the defendant. *Olano*, 507 U.S. at 735. Granted, *Olano* did "not decide whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial,'" instead leaving open the possibility of "a special category of forfeited errors that can be corrected regardless of their effect on the outcome." *Id.* (citations omitted). But courts typically look for prejudice, and the Seventh Circuit does so in the context of jury instruction, refusing to reverse on the basis of plainly erroneous instructions if the error was not prejudicial; in this regard, it has stated that

When a defendant contends that an instruction was deficient, the key question is the effect of the error. *United States v. Kerley,* 838 F.2d 932, 938 (7th Cir. 1988). A jury charge that fails properly to describe an element of the crime is not always considered reversible error. See *Neder v. United States,* 527 U.S. 1, 8-10 (1999) (holding that instructional error is subject to harmless-error review); *Pope v. Illinois,* 481 U.S. 497, 502-04 (1987). In *Neder,* the Court held that the verdict could stand in the face of an

8

sufficiency of the evidence, '[the Seventh Circuit] must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lawson*, 810 F.3d 1032, 1039 (7th Cir. 2016).

The evidence against Clark was overwhelming—whether viewed in light of the jury instructions given or in light of *Rosemond*—and therefore a sufficiency-of-the-evidence challenge would have failed on direct appeal, making appellate counsel's performance neither deficient nor prejudicial. Clark's co-defendant, Eric Griffin, testified at Clark's trial that, with respect to Counts Two, Five, and Seven, there was an explicit plan that Arnold would carry a gun to "hold the floor down" while Clark would actually retrieve the money. (*See, e.g.*, Case No. 11-CR-30, Doc. 199 at 379:8-380:13, 396:25-402:20, 403:15-18, 410:3-14). Griffin also stated that he and Clark both owned and controlled the guns that were used in the robbery and recovered during a search of Griffin's house. (Case No. 11-CR-30, Doc. 200 at 476:15-479:18). The employees at each bank testified that the robberies all occurred in the same way: one individual (later identified as Arnold) would enter with a gun, followed by another (Clark), who would access the vault. (*See generally* Case No. 11-CR-30, Doc. 198, 199). Surveillance footage always corroborated the witnesses' version of events. Arnold and Clark acted in practically the

---

instruction that omitted an element of the crime if it appeared "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 527 U.S. at 15, citing *Chapman v. California,* 386 U.S. 18, 24 (1967).

*United States v. Caira*, 737 F.3d 455, 464 (7th Cir. 2013). As the Court will discuss further, the evidence was clearly sufficient to convict Clark of the § 924(c) counts; it is beyond a reasonable doubt that the error in the instructions did not impact the verdict. Accordingly, even if the jury-instruction ground were properly before the Court, it would suffer the same fate as the sufficiency-of-the-evidence argument and for practically the same reason.

9

same way every time; simply put, a reasonable conclusion from this testimony was that Clark had planned on Arnold's presence and use of a gun during each robbery. Arnold's description of each bank robbery supports this conclusion: he always had a gun of the type owned/controlled by Griffin and/or Clark; Clark, meanwhile, would be in charge of taking the money. (*Id.* at 499:18-511:24). Finally, the Court must point out that, after the first robbery (at which Griffin's testimony established Clark's foreknowledge of a weapon), Clark clearly knew how Arnold had operated in the prior robberies and, if he disapproved of it, could have withdrawn from future crimes. He did not. In light of all of this evidence, even under *Rosemond*'s heightened foreknowledge standard, Clark was clearly guilty beyond a reasonable doubt of the § 924(c) charges.

Accordingly, this Court cannot envision a successful direct appeal on the basis of sufficiency of the evidence, and, because the sufficiency of the evidence challenge would have been unsuccessful, Clark suffered no prejudice as a result of counsel's failure to raise it. *Cf. Lawson*, 2016 WL 212796, at *7-*8 (acknowledging error in § 924(c) instruction following *Rosemond*, because the evidence supported defendant's foreknowledge in circumstances similar to this case). In any event, at the very least, the arguments raised by appellate counsel were clearly stronger than the sufficiency-of-the-evidence issue (the issues that *were* raised precipitated a lengthy discussion of an unsettled area of law), meaning that counsel was not deficient.

Thus, the Court is obliged to reject Clark's argument that his appellate counsel was deficient for failing to appeal the denial of his Rule 29 motion in light of *Rosemond*.

The Court will, however, grant Clark a certificate of appealability on this issue. The

10

Court is cognizant of the fact that its analysis of this issue is extremely fact-based. Jurists of reason might disagree as to whether the evidence offered at trial satisfied the elements of the 18 U.S.C. § 924(c) charges against Clark in light of *Rosemond*. And, while the Court feels strongly that the arguments raised by appellate counsel were stronger than the *Rosemond* argument, again, jurists of reason could disagree. Accordingly, a certificate of appealability is appropriate as to this issue.

### B.    Failure to Appeal Denial of Motion to Dismiss on Sixth Amendment Grounds

Clark's next asserted ground for relief is that his appellate counsel was ineffective in failing to appeal the Court's denial of Clark's motion to dismiss on the basis of his Sixth Amendment right to a speedy trial. (Doc. 1 at 7; Doc. 18 at 8-16). The Government understood Clark to be making an argument related to pre-indictment delay (Doc. 15 at 13), but Clark disavows that position and argues, instead, that the post-indictment period violated his Sixth Amendment right to a speedy trial (Doc. 18 at 8-16). For the sake of completeness, the Court will determine whether Clark's appellate counsel should have pursued a speedy trial issue on appeal regarding either pre-trial delay, whether on Sixth Amendment or Fifth Amendment grounds, or post-trial delay.

#### i.    *Pre-Indictment Delay Under Sixth Amendment Right to Speedy Trial*

The pre-indictment delay in Clark's case was not problematic under the Sixth Amendment; therefore, the issue lacked merit and failure to raise it on appeal did not prejudice Clark. Generally speaking, pre-indictment delay does not implicate Sixth Amendment concerns. *See, e.g.*, *United States v. Marion*, 404 U.S. 307, 315 (1971) ("On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to

11

those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time."). Rather, "congressionally-established statutes of limitation provide the primary safeguard against unreasonable delay in prosecutorial charging decisions." *United States v. Hunter*, 197 F.3d 862, 865 (7th Cir. 1999) (citing *United States v. Pardue*, 134 F.3d 1316, 1319 (7th Cir. 1998)); *see also Clark*, 754 F.3d at 405 ("Someone who is only the target of a criminal investigation has no right to have the government wrap up its investigation quickly and bring charges, even if the target is aware of the investigation."); *United States v. Richardson*, 780 F.3d 812, 816-17 (7th Cir. 2015).

Accordingly, to the extent that Clark's appellate counsel had raised this claim on appeal, the claim would have been rejected; Clark, therefore, suffered no prejudice as a result of the failure to raise the claim.

Likewise, the Court will not issue a certificate of appealability as to this claim. It is well settled that the Sixth Amendment does not cover pre-indictment delay. *See, e.g.*, *Marion*, 404 U.S. at 315. Accordingly, jurists of reason would not debate that Clark is not entitled to relief on this ground.

ii.    *Pre-Indictment Delay Under Fifth Amendment Right to Due Process*

Pre-indictment delay can, however, run afoul of the Fifth Amendment's Due Process Clause, which "has a limited role to play in protecting against oppressive delay," *United States v. Lovasco*, 431 U.S. 783, 789 (1977), but an argument on that basis was extremely unlikely to succeed and, therefore, failure to assert it was not deficient performance.

12

Recently, in *Richardson*, the Seventh Circuit considered a situation bearing some similarities to Clark's. 780 F.3d at 814-15. There, a defendant was arrested by state authorities for committing domestic battery. *Id.* at 814. State authorities searched the defendant's home and found guns and ammunition. *Id.* The defendant had previously been convicted of a federal crime, meaning that his possession of the guns and ammunition violated federal law. *Id.* Accordingly, federal authorities filed a criminal complaint and affidavit of probable cause against the defendant in federal court, together with a federal detainer in the state jail in which the defendant was being held. *Id.* The defendant remained in jail while the state charges against him were pending. *Id.* He pled guilty to those charges approximately 15 months after his arrest, and was sentenced to time served. *Id.* at 815. He, thus, would have been released but for the federal detainer. *Id.* Instead, he was arrested and jailed on a federal warrant and then indicted on federal charges of being a felon in possession of a firearm. *Id.* He moved to dismiss those charges against him, arguing that his Sixth Amendment right to a speedy trial was violated by the fact that those federal charges hung over his head for the 15 months he was in state custody. *Id.* The district court denied that motion and the defendant appealed. *Id.*

The Seventh Circuit flatly rejected the defendant's Sixth Amendment argument, but then acknowledged that the Fifth Amendment's Due Process Clause might have provided the better analytical framework. Judge Posner, writing for the majority, speculated:

> Suppose Indiana had dawdled in prosecuting Richardson and as a result not 16 months but 3 years had elapsed between the filing of the federal complaint, affidavit, and detainer and the federal indictment. A delay of such length might have seriously prejudiced Richardson's defense. The best solution in such a case might be, as suggested in *Pharm v. Hatcher*, 984 F.2d [783,] 786–87 [(7th Cir. 1993)], to inquire whether the prejudice was so great, and not excused by any legitimate need of the government to complete a thorough investigation before indicting, that the delay had denied the defendant due process of law. See also

13

> *United States v. Lovasco,* 431 U.S. 783, 796-97, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Zukowski, supra,* 851 F.2d at 178; *United States v. Samples,* 713 F.2d 298, 302 (7th Cir. 1983); *United States v. Sanders,* 452 F.3d 572, 581-83 (6th Cir. 2006).

*Richardson*, 780 F.3d at 818. Nonetheless, the majority concluded that the defendant had not shown the requisite delay, and so rejected any due process argument. *Id.*

Judge Hamilton filed a concurring opinion that highlighted the very limited possibility of finding a due process violation on similar facts:

> [I]t's telling that none of the cases cited by the majority have actually found a due process violation on such facts. See *United States v. Lovasco,* 431 U.S. 783, 796 (1977) ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, *even if his defense might have been somewhat prejudiced by the lapse of time.*") (emphasis added); *United States v. Zukowski,* 851 F.2d 174, 178 (7th Cir. 1988) (suggesting that due process is more appropriate challenge but finding no due process violation because pre-indictment delay did not prejudice defendant); *United States v. Samples,* 713 F.2d 298, 302 (7th Cir. 1983) (no due process violation where defendant challenged twenty-month delay between dismissal of first indictment and re-indictment). The majority emphasizes *Pharm v. Hatcher,* 984 F.2d 783 (7th Cir. 1993), as support for this potential solution, but *Pharm* stated flatly: "The Due Process Clause ... plays only a limited role in protecting against oppressive prosecutorial delay. In fact, we have never found pre-accusation delay rising to the level of a constitutional violation." *Id.* at 786 (citation omitted). On closer inspection, the due process cases do not offer much of a solution to these concerns.

*Id.* at 824 (Hamilton, J. concurring).

In short, the Court takes from *Richardson* that a due process challenge to pre-indictment delay is a long shot, and particularly in situations similar to Clark's. There is no indication that Clark suffered any prejudice as a result of the pre-indictment delay, and certainly both the state and federal governments had "legitimate need[s]," *id.* at 818, to prosecute Clark in succession rather than simultaneously. For these reason, the Court finds that the due process issue was clearly weaker than those actually raised by appellate counsel. Accordingly, appellate counsel's

14

performance was not deficient.

The Court will not grant Clark a certificate of appealability on this issue. It is very difficult to establish that pre-indictment delay violates a defendant's due process rights. *See, e.g.*, *id.* at 824 (Hamilton, J., concurring). Accordingly, jurists of reason could not debate that the arguments raised by counsel were much stronger.

### iii. Post-Indictment Delay

Clark appears to have realized that his best bet for a speedy-trial challenge is in the delay between the time he was indicted and brought to trial. In his reply brief, he has focused almost exclusively on that issue in his speedy trial argument. (Doc. 18 at 8-16). Still, his post-indictment delay argument lacks merit.

The Supreme Court, in *Barker v. Wingo*, "identified four factors that bear on the question whether a particular defendant has been deprived of the [Sixth Amendment right to a speedy trial]: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015) (quoting *Baker v. Wingo*, 407 U.S. 514, 530 (1972)).

Of course, "[w]ithout a meritorious speedy trial claim, [Clark] cannot possibly demonstrate that he was prejudiced by his appellate counsel's failure to argue such a claim," *Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014), and that is precisely the situation, here.

The Court begins with the first, second, and third factors, which weigh against Clark's position. As to the first, there is no question that it took well over 12 months to bring Clark to trial, making the delay "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652

15

& n.1 (1992). But the second *Barker* factor rebuts that presumption.[4] *See Ashburn*, 761 F.3d at

752 ("the second *Barker* factor—the reason for delay—not only weighs against [the petitioner];

it rebuts the presumption of prejudice flowing from the…delay."). As the prosecutor pointed out

in a letter to the Court, Clark had pending motions before the Court from shortly after the

arraignment, and the Court was tasked with addressing all of those motions. (*See* Doc. 81). Not

counting his co-defendant Griffin's March 2, 2011, motion to designate the case complex, Clark

had a motion pending in one form or another from March 14, 2011 (Doc. 20) all the way through

December 13, 2011 (*see* Doc. 143 at 1-2). In that time, he changed attorneys once; decided to

represent himself; filed innumerable motions, including several motions to suppress; requested

evidentiary hearings and the assistance of investigators (which the Court granted). All of this

took time for the Court and parties to address; and, even if Clark was requesting to proceed with

trial during this period, his defense would have suffered, because he was still engaged in his own

investigation. (*See* Doc. 141 (January 3, 2012, letter requesting additional investigator funds)).

Simply put, Clark bears responsibility for, at the very least, a large portion of the delay in his

trial.[5] As to the third *Barker* factor, while Clark asserted his speedy trial rights throughout the

---

4  Clark now argues that the Government waived any argument regarding the reason for delay;
the cases he cites in support are inapposite. Clark cites *United States v. Macino*, 486 F.2d 750 (7th Cir.
1973), and *United States v. Lockett*, 526 F.2d 1110 (7th Cir. 1975), which were both direct appeals in
which the Government failed to specify a reason for delay. There is a much different situation here:
because Clark did not appeal this issue, the Government was never called upon to provide a reason for
delay. Had the Government been put to that task, it would have had a very strong argument that Clark
caused the delay. The Government's lack of argument on the topic in this case is—at most—attributable
to a misunderstanding of Clark's claims. It should not bear upon the issue before the Court: whether
Clark's appellate counsel was ineffective in failing to raise this issue on appeal.

5  The Court can also identify specific extensions requested by Clark. On March 17, 2011,
through counsel, Clark requested a short extension of time to file pretrial motions, resulting in
approximately one month of delay. (Doc. 22, 25); *Ashburn*, 761 F.3d at 753 (counsel is agent of
defendant and delays caused by counsel are charged to defendant; at very least, delay is not chargeable to
the state) (citing *Vermont v. Brillon*, 556 U.S. 81, 90-91). On June 27, 2011, while Clark was being

16

course of his proceedings (*see, e.g.*, Case No. 11-CR-30, Doc. 16, 20, 24, 47, 57, 74, 85, 130, 144), he also engaged in motion practice that, by necessity, slowed the proceedings down. Accordingly, this factor does not weigh in Clark's favor. *See Ashburn*, 761 F.3d at 753 (where defendant has asserted speedy trial right but also requested adjournment, factor does not weigh in his favor) (citing *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007)).

This leaves the fourth factor, prejudice, which is the most important of the four *Barker* factors. *West v. Symdon*, 689 F.3d 749, 752 (7th Cir. 2012). In assessing prejudice, the Court must consider the "circumstances of this case in light of the interests the right is intended to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired.'" *Oriedo*, 498 F.3d at 600 (citing *Barker*, 407 U.S. at 532). "Actual prejudice to the defense is the 'most serious' concern raised by a delay because it may 'skew[] the fairness of the entire system.'" *Oriedo*, 498 F.3d at 600 (quoting *Doggett*, 505 U.S. at 651-52).

In light of these standards, the Court finds that Clark could not have established prejudice on appeal. As to the first prejudice concern—prevention of oppressive pretrial incarceration—the Court must point out that, for a portion of the period he would have been held pre-trial in this case, he also would have been subject to custody on separate state charges. *See Clark*, 754 F.3d at 404-05 (Clark was arrested on October 8, 2010, and on November 23, 2010, sentenced to

---

represented by his second appointed attorney, the magistrate judge held a hearing to address the schedule of the case. (Doc. 64). Most concretely, Clark's attorney requested an extension to file additional motions, as Clark had requested of him; those motions would not be fully briefed until August 16, 2011. (Doc. 64 at 2). So, there is at least another month-and-a-half chargeable to Clark. *See Ashburn*, 761 F.3d at 753. Further, at that hearing, "the parties," presumably including Clark's attorney, "indicated they would be ready for trial in early January 2012." (Doc. 64 at 1). Presumably, at least some portion of that delay would be attributable to Clark, through his attorney, although shortly thereafter Clark terminated that attorney's representation.

17

seven months in jail). This somewhat, though not fully, diminishes concerns regarding oppressive pretrial incarceration. *See, e.g.*, *Ashburn*, 761 F.3d at 753; *West*, 689 F.3d at 752 (where defendants were incarcerated on separate charges, they could not claim oppressive incarceration). The Court will assume that the second prejudice concern—pretrial anxiety—applies to Clark.

However, the third prejudice concern—actual prejudice, which is the most important, *Oriedo*, 498 F.3d at 600—does not weigh in Clark's favor. Clark argues that he was prejudiced in the following ways: his first appearance was delayed; his trial had to be conducted by a different Article III judge than originally assigned; the Government "lied" that Clark was arrested for fleeing, thus reducing the likelihood of acquittal; witness' memories faded; other witnesses became unavailable; a piece of evidence was lost. (Doc. 18 at 10-16). Some of these have nothing to do with the length of time that the case was pending; for instance, Clark's delayed first appearance happened early in the case, so it does not constitute prejudice from the delay. Likewise, the Government's "lie" was something that *occurred* during the delay but was not attributable to it. The reassignment to a new judge did not prejudice Clark, because he still received what he was due: a trial before an Article III judge. As to faded memories, Clark points to the testimony of Robin Arnold, Arkadijs Lindem, Kevin Kipper, and Michael Zamkow, all of whom stated during testimony that they were having difficulties remembering specific facts. But each of those witnesses was asked to remember events that happened mostly from 2008 to 2009—years before Clark had even been arrested; the additional time until trial was unlikely to make the events substantially harder for them to remember. In any event, the other evidence against Clark was overwhelming, diminishing any prejudice from their allegedly faded

18

memories. As to unavailable witnesses, Clark points to Frankie Day, Lakeshia McGhee, Dennis Navils, James Stewart, and Davashia Porter. The passage of time did not cause the unavailability of those witnesses. Clark gave his investigator Lakeshia McGhee's address, but that individual never made contact with the investigator—a personal choice. (Case No. 11-CR-30, Doc. 200 at 664:5-665:1). Clark provided his investigator the names of Frankie Day and Dennis Navils *the day before he intended to call them at trial*—Clark's own fault. (*Id.* at 665:2-19). As for James Stewart and Davashia Porter, Clark's investigator never testified that those individuals were unavailable; the Court cannot find any such information in the record. (*Id.* at 661:22-671:10). She *did* testify to communicating with Darmeka or Starmika Broom, who did not show up to testify—again a personal choice. (*Id.* at 665:22-666:9). She also testified to locating Dante Rice in prison, and letting him know through a social worker that he could talk to her about testifying—Dante Rice opted not to do so. (*Id.* at 663:14-664:4). Finally, the only evidence that Clark points out as having been lost was records and certificates from Genesis Treatment Center, but Clark was able to put in evidence on precisely that topic; in any event, it is not clear that those materials were lost due to the passage of time. In sum, the Court cannot identify any actual prejudice that Clark suffered as a result of the alleged speedy trial violation.

With, at best, limited prejudice and nothing on the other *Barker* factors, the Court is obliged to find that Clark's speedy trial argument would have failed if he had asserted it on appeal. *Cf. Ashburn*, 761 F.3d at 753-54 ("if there is no actual prejudice, the presumed prejudice flowing from a long delay is 'insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors…. This case does not present even a weak showing on the other *Barker* factors: Ashburn was as much, if not more, responsible for the pretrial delay; while

Ashburn asserted his speedy trial rights, he also continued to request continuances; and the delay did not cause any pretrial incarceration and did not impair his defense."). Clark, therefore, was not prejudiced by the failure to raise the issue on appeal (nor did counsel act deficiently in failing to do so). Accordingly, this ground fails.

The Court will also deny a certificate of appealability on this issue. The Court finds that the *Barker* factors weigh significantly against Clark's argument that post-indictment delay violated his Sixth Amendment speedy trial rights. The argument was, therefore, not strong in comparison to the other arguments that appellate counsel raised on appeal; the Court does not believe that jurists of reason would disagree on that point.

C.    Failure to Appeal "Structural Error" of Vacant Bench

Clark's next argument is that his appellate counsel should have appealed the "structural error," that resulted when I, as presiding judge, conducted proceedings via speakerphone, together with another Article III district judge, Judge Charles Clevert, who was present in the courtroom. (*See* Case No. 11-CR-30, Doc. 201 at 794:20-795:4). As a result of medical issues, I left Milwaukee to head home after instructing the jury and after the parties made their closing arguments. (*Id.*) Judge Clevert was present in court when the jury sent a note and spoke with the parties about that note, but then I appeared by speakerphone to address their question. (*Id.* at 798:6-806:9). The jury then returned a verdict, which I appeared by speakerphone to accept, with Judge Clevert in the courtroom. (*Id.* at 806:25-809:6). I then instructed the clerk to poll the jury, which she did, before I thanked and dismissed the jury. (*Id.* at 809:7-811:17).

The Court begins by pointing out that Clark did not object to this procedure at the time of trial (*Id.* at 794:20-795:4), so if the issue had been appealed it would have been reviewed for

20

plain error, Fed. R. Cr. P. 52(b). If Clark had appealed the issue, he would not have prevailed.

To begin, contrary to Clark's arguments, my absence from the bench did not constitute a "structural error." A structural error or defect is one that is "not simply an error in the trial process itself," but instead affects "the framework within which the trial proceeds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-311 (1991)). In the past, the Supreme Court has found such errors in the denial of counsel, the denial of self-representation, the denial of a right to a public trial, and the denial of a right to a trial by jury. *Gonzalez-Lopez*, 548 U.S. at 148-49 (citations omitted). It is something that "render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt." *United States v. Harbin*, 250 F.3d 532, 542 (7th Cir. 2001). What happened here did not reach that level. Clark has not made clear how my appearing by speakerphone had any impact on the proceedings, let alone how it impacted his rights in any way. Furthermore, the Court cannot identify any case law that classifies such as a "structural error." As such, it could not have been "plain error," and Clark would not have been entitled to relief on direct appeal.

Clark also argues that I violated Rule 43 by being physically absent from the bench after the jury asked its question and for the return of a verdict; he would not have prevailed on this argument on appeal. To be sure, many circuits have found that, under this rule, a *defendant's* appearance by telephone or videoconference will not suffice. *See, e.g.*, *United States v. Salim*, 590 F.3d 115, 122 (2d Cir. 2012) (citing *United States v. Williams,* 641 F.3d 758, 764-65 (6th Cir. 2011); *United States v. Torres-Palma,* 290 F.3d 1244, 1245-48 (10th Cir. 2002); *United States v. Lawrence,* 248 F.3d 300, 301, 303-04 (4th Cir. 2001); *United States v. Navarro,* 169 F.3d 228, 235-39 (5th Cir. 1999)). However, only two courts have found that the *judge* must be

Case 2:15-cv-00726-JPG   Filed 03/04/16   Page 21 of 55   Document 21

present. *Torres-Palma*, 290 F.3d at 1245-48; *Navarro*, 169 F.3d at 235-39. And the Seventh Circuit has not yet weighed in. *See United States v. Thompson*, 599 F.3d 595, 598 (7th Cir. 2010) ("The problem is not with Thompson's contention that Rule 43 requires the physical presence of all participants in the same courtroom; he may well be right that it does, although we need not decide today whether to join the consensus among the circuits on this point."). And, more importantly, no court has ever addressed the precise circumstance of this case, in which Judge Clevert provided support in the courtroom. Without clear law on the issue, any error would not have been plain error, and therefore would not have warranted relief on appeal.

Clark's final arguments are: (1) that, because I was not present at the time the verdict was rendered, the verdict was not rendered "in open court," as Rule 31(a) requires; and (2) that I lost jurisdiction to pronounce a judgment of conviction when I left the bench. The first argument fails because it suggests an interpretation of "in open court" (requiring physical presence of a judge) that does not appear to be supported by any law. The second argument fails because it is contrary to 28 U.S.C. § 296, which provides that "[a] justice or judge who has sat by designation and assignment in another district or circuit may, *notwithstanding his absence from such district* or circuit or the expiration of the period of his designation and assignment, decide or join in the decision and final disposition of all matters submitted to him during such period and in the consideration and disposition of applications for rehearing or further proceedings in such matters." 28 U.S.C. § 296 (emphasis added). This is not inconsistent with *Frad v. Kelly*, 302 U.S. 312 (1937), or any of the other cases Clark has cited. In fact, *Frad* says precisely that "[w]hen an assigned judge has presided at the trial of a cause, he is to have power…though he may have returned to his own district, to perform the functions which are incidental and supplementary to

22

the duties performed by him while present and acting in the designated district." *Id.* at 316. The holding of *Frad* was simply that a judge presiding by designation cannot take any action that exceeds the scope of his or her designation. *See id.*; *Wrenn v. District of Columbia*, 808 F.3d 81, 83-84 (D.C. Cir. 2015) ("In *Frad*...a district judge sat as a vising judge under a designation for a *specified period of time. After the expiration of that time*, he issued an order in a case which he had previously heard in the visited district. … The Supreme Court concluded that the order was 'null' because the judge by that time had no authority in the district in which he issued the order.") (emphasis added); *Alder Group, Inc. v. JP Morgan Chase & Co.*, No. 06-C-262, 2006 WL 1728091, *1 (E.D. Wis. June 20, 2006) ("§ 296 does not provide a judge with the authority to entertain a case *to which his temporary assignment does not extend*…") (emphasis added). Certainly, even if either of these constituted errors, they were not plain errors, and therefore would not have warranted relief on appeal.

Because Clark would not have prevailed on any of these arguments on appeal, he was not prejudiced by (nor was appellate counsel deficient for) the failure to raise them on appeal.

Nonetheless, the Court will grant Clark a certificate of appealability on one small portion of this issue: whether his appellate counsel was deficient for failing to challenge under Rule 43 my presence by speakerphone at the time that the jury asked a question and rendered their verdict. There is no clear authority from the Seventh Circuit on this issue, and other circuits have found that presence by speakerphone at a sentencing is impermissible. Reasonable jurists might disagree over my conclusion that Clark is not entitled to relief on this point.

The Court will deny a certificate of appealability as to the remaining issues under this subheading. Specifically, the Court is confident in its conclusion that presence by speakerphone

does not constitute structural error. Likewise, *Frad* makes clear that my absence from the district did not impact my jurisdiction to take the verdict in this case. Had Clark presented these arguments on appeal, the Seventh Circuit would have rejected them. Jurists of reason would not disagree.

### D. Failure to Appeal "Denial of a Fair Trial"

Clark's fourth ground for relief is actually a grab bag of several things that he believes his appellate counsel should have appealed. The Court addresses each separately.

#### i. *Exclusion of Prior Recorded Statement of Jeffrey Moore*

Clark argues that his appellate counsel should have appealed the Court's denial of his request to play an audio recording of a witness' statement to law enforcement officers. Jeffrey Moore testified for the government regarding Clark's robbery of the Pyramax Bank, for which Moore served as getaway driver. (Case No. 11-CR-30, Doc. 30 at 53:11-84:19). On cross examination, Clark hoped to play an audio recording of Moore's statement to law enforcement officers. (*Id.* at 86:11-87:3). The Government objected on the basis that the recording was hearsay, but Clark asserted that the recording contained prior inconsistent statements and/or evidence of coercion. (*Id.* at 86:11-89:3). The Court listened to a portion of the recording in the absence of the jury (*id.* at 90:6-90:11), and told Clark that he could question Moore about potential coercion and inconsistencies (*id.* at 90:11-95:16). The Court even provided Clark with limited guidance on how to approach the situation. (*Id.*) It then told Clark that it would take under advisement the issue of whether the audio recording contained any inconsistent statements. (*Id.* at 96:2-97:23). After Clark's cross-examination of Moore and the law enforcement officers who had conducted Moore's interview, the Court took the issue back up. (*Id.* at 160:20-165:20).

24

It listened to the audio recording and allowed Clark to explain his theory supporting its admission. (*Id.*) Ultimately, the Court found no evidence of inconsistency or coercion, and so it did not admit the recording. (*Id.*)

Appellate counsel's failure to assert this ground on direct appeal was neither deficient nor prejudicial. If he had raised this argument on appeal, the Seventh Circuit would have reviewed the Court's evidentiary ruling for an abuse of discretion. *See, e.g.*, *United States v. Beavers*, 756 F.3d 1044, 1049 (7th Cir. 2014) (citing *United States v. Alayeto*, 628 F.3d 917, 920 (7th Cir. 2010)). An abuse of discretion exists only where "the record is devoid of evidence on which [the trial court] could have based [its] rulings." *Alayeto*, 628 F.3d at 920 (citing *Agushi v. Duerr*, 196 F.3d 754, 759 (7th Cir. 1999)). The audio recording was hearsay, and, after reviewing the recording, the Court found no evidence of either coaching or inconsistent statements. That ruling was well-grounded in what the Court was able to observe during the proceedings, and the Court does not believe the Seventh Circuit would have found any error. Clark has submitted a compilation of statements by Moore that Clark asserts are either inconsistent or evidence of coaching, but that submission does not alter the Court's conclusion. (Doc. 19). Even if those items constituted inconsistencies (and, for the most part, they are so minor and/or resulting from Clark's own interpretation of the statements rather than the statements, themselves, that the Court would be reluctant to term them inconsistencies), the Seventh Circuit still would not likely have reversed this Court's decision. The Court did not abuse its discretion in prohibiting Clark's presentation of the recording of Moore's statement; there was ample reason to do so. Moreover, even if it was an error, the error was harmless. The evidence of Clark's guilt was overpowering and hardly reliant on Moore's testimony alone. Thus, even assuming error on this point, the

25

outcome would have been no different. *See United States v. Zuniga*, 767 F.3d 712, 717 (7th Cir. 2014), *cert. denied,* 135 S. Ct. 1018 (2015) (reviewing hearsay ruling for harmless error, and noting that "[w]here other untainted incriminating evidence is overwhelming the error is deemed harmless.") (internal quotations omitted). For all of these reasons, the Court finds that appellate counsel's performance cannot be deemed deficient or prejudicial.

ii.     *Admission of Testimony Regarding Probation Officer's Employment*

Clark next complains that a probation officer who was called as a witness should not have been able to testify regarding his role as Clark's probation officer. The Government offered that testimony to counter Clark's alibi theory. Clark, on the basis of a record from Genesis Treatment Center, asserted that he was in a treatment center on October 26, 2008, at the time of one of the robberies. (Case No. 11-CR-30, Docket #200 at 626:17-632:17). Thus, on rebuttal, the Government called Clark's probation officer to establish that the officer had contact with Clark on both October 27, 2008, and October 28, 2008, both at the federal courthouse in Milwaukee. (Case No. 11-CR-30, Docket #201 at 744:17-747:3). This evidence undermined Clark's alibi theory.

Failure to raise this issue on appeal was neither deficient nor prejudicial. Again, the Court's evidentiary ruling would be reviewed for abuse of discretion. There was no error in the admission of the probation officer's testimony. To begin, while evidence of crimes, wrongs, or, other acts—which jurors could glean from the probation officer's testimony, *see United States v. Beck*, 625 F.3d 410, 416 (7th Cir. 2010)—is prohibited to establish character, it may be admissible for other purposes. Fed. R. Evid. 404(b). And, in this case, the Government offered it for another purpose: to attack Clark's alibi theory. The evidence would still be subject to Rule

26

403's balancing test, under which evidence should be excluded when its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. But, in this case, the evidence was *extremely* probative: it totally undermined Clark's alibi. On the other hand, there was little danger of unfair prejudice; the probation officer's testimony was limited to discussion of the time frame in question, and did not address Clark's past crimes. The Government also never brought up Clark's past crimes. Simply put, the probative value of the evidence substantially outweighed its danger of unfair prejudice. And Clark's citation to *Beck* does not change that analysis. Clark asserts that "undue prejudice results whenever a probation officer is permitted to testify and state his occupation." (Doc. 18 at 21 (citing *Beck*, 625 F.3d at 417)). But *Beck* does not stand for that proposition. Rather, *Beck* actually engaged in the precise Rule 403 analysis that this Court just outlined (and ultimately determined that any error on the basis of the probation officer's testimony was harmless). The Court is confident that the Seventh Circuit would not have found any reversible error with regards to the probation officer's testimony. Accordingly, appellate counsel was not deficient and Clark was not prejudiced in this regard.

iii. *Admission of Video of Flight*

The Government entered into evidence a video recording of Clark's flight from police officers attempting to arrest him.

Appellate counsel's failure to challenge that admission on appeal was neither deficient nor prejudicial. "Evidence of flight…may be admissible to show consciousness of guilt, as well as guilt itself," *United States v. Skoczen*, 405 F.3d 537, 548 (7th Cir. 2005) (citing *United States v. Solomon*, 688 F.2d 1171, 1176 (7th Cir. 1982); *United States v. Jackson*, 572 F.2d 636, 639 (7th Cir. 1978)). "The probative value of flight as circumstantial evidence of guilt depends upon

27

the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Skoczen*, 405 F.3d at 548 (citing *United States v. Levine,* 5 F.3d 1100, 1107 (7th Cir.1993)). Supporting those four inferences is testimony from the arresting officer: "While he was in the back seat of the squad Mr. Clark had stated to me that he just wanted to get this over with, that the Feds were all over him. He had stated that he knew that he was wanted because he saw his picture profiled in a wanted book. And then another note, he also stated that he's probably not going to be - - to get out until he's about 70 years old." (11-CR-30, Doc. 200 at 617:23-618:4). From that statement, the Court is satisfied that all of the required inferences are present and that the Seventh Circuit would not have found any abuse of discretion. Thus, there is neither deficient performance nor prejudice in appellate counsel's failure to raise the issue.

### iv.    *"Prohibition on Cross Examination" and "Case Jumping" Instruction*

As the Government points out, it is hard to understand Clark's final arguments in this section. His first appears to be arguing that he should have been allowed to ask Arnold, one of his co-actors, whether any evidence for his crimes existed besides his confession. (Doc. 18 at 23-24). Clark's argument on this basis appears to be the "corroboration rule," which "forbids the Government from obtaining a conviction by relying solely on a defendant's confession. *United States v. Dalhouse*, 534 F.3d 803, 805 (7th Cir. 2008). But that rule, at least in the Seventh Circuit, "does not affect the *admissibility* of a confession," but instead simply governs the evidence necessary to convict the defendant. *Id.* (citing *United States v. Grizales*, 859 F.2d 442,

28

444-45 (7th Cir. 1988); *United States v. Calderon*, 348 U.S. 160, 167 (1954)). Thus, to the extent that the Court "barred" Clark from presenting evidence on this topic, it was not error; Arnold was not on trial, and so corroboration of his admission was not necessary.

Clark's second argument appears to be that the jury was not properly instructed on his defense theory of "case jumping."[6] (Doc. 18 at 24-25). He argues that the jury should have been instructed that the Government had to prove beyond a reasonable doubt that. Clark was not a victim of case jumping. To be sure, where a defendant proffers a particular theory of defense, he may be entitled to an instruction in that regard, but only "if he satisfies four requirements: (1) the defendant proposes a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the defendant's theory of defense is not part of the charge; (4) the failure to include an instruction on the defendant's theory of defense would deny the defendant a fair trial." *United States v. Ebert*, 294 F.3d 896, 899 (7th Cir. 2002) (internal quotation marks omitted) (quoting *United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir. 1994)). Clark has not identified where in the record he proposed a case jumping instruction (let alone a correct one) and his position on case jumping was hardly consistent with the evidence. He would not have been able to satisfy that four-part test if he had appealed this issue.

Accordingly, neither of these arguments would have prevailed on appeal, and therefore

---

[6] As the court explained in its order denying Clark's motion for a new trial:

> An individual "case jumps" when he faces prosecution for one crime, obtains information—either from other witnesses, television, or discovery materials kept at the jail—about the crimes allegedly committed by others in the jail, and relays that information to law enforcement as if the individual witnessed the conduct directly or heard the defendant admit to the conduct in the jail, all with the purpose of obtaining leniency in his own prosecution.

United States v. Clark, No. 11-CR-30-JPG, 2012 WL 1995138, at *3 (E.D. Wis. June 4, 2012).

29

appellate counsel's failure to raise them was neither deficient nor prejudicial.

             *v.*      *Denial of Certificate of Appealability as to "Fair Trial" Grounds*

The Court will not issue a certificate of appealability on any of Clark's "denial of a fair trial" grounds for relief. As to each of the evidentiary challenges, the Court's rulings were supported by the record, and thus did not constitute abuses of discretion. And, even if any of those rulings could be classifies as error, they would be harmless, because the evidence against Clark would still have established his guilty beyond a reasonable doubt. As to the arguments relating to a "prohibition on cross examination" and "case jumping" instruction, the Court finds that it acted well within the bounds of settled law, making any appeal on those bases frivolous. Accordingly, these arguments were much weaker than those raised by appellate counsel. No reasonable jurist would disagree.

       E.      <u>Failure to Cite Controlling Precedent</u>

Clark's next argument is that his appellate counsel performed deficiently by failing to cite *United States v. King*, 338 F.3d 794 (7th Cir. 2003), in his opening brief on appeal.

The Court can dispose of this argument easily: even assuming it was deficient for appellate counsel not to cite *King*, there is no indication that Clark was prejudiced by that failure. Nothing in *King* directly controls Clark's situation, and it certainly would not have compelled the Seventh Circuit to reach a contrary conclusion. That much is made clear by the fact that the Seventh Circuit cited *King* in its decision on Clark's appeal. *Clark*, 754 F.3d at 404 (citing *King*, 338 F.3d at 797 for legal standard applicable to Speedy Trial Act issues). That citation at least makes clear that the Seventh Circuit was aware of the *King* decision; if the Seventh Circuit found that *King* had controlling or persuasive effect on the issues in Clark's case, nothing prevented

Case 2:15-cv-00726-JPG   Filed 03/04/16   Page 30 of 55   Document 21

them from holding so. In short, Clark was not prejudiced by the failure to cite *King*, so this argument fails.

Clark also argues that his appellate counsel provided "substandard factual presentation" on appeal; this argument also fails. (*See* Doc. 2 at 5-7). In this regard, Clark continues to assert that he was arrested for a federal crime, as opposed to a state crime. He points out that (1) FBI Agent Benjamin Hruz testified that "[e]very bank robbery is opened as a federal case," (2) the Court and Government characterized his arrest on October 8, 2010, as one "for this case" on "bank robbery" charges, and (3) co-actor Jeffrey Moore had already been charged in federal court for bank robbery by October 8, 2010. (Doc. 2 at 7). None of that information would likely have changed the Seventh Circuit's decision. The Seventh Circuit held that Clark was not in federal custody as of October 8, 2010, and therefore that the Speedy Trial Act clock had not begun to run on that day. *Clark*, 457 F.3d at 405-07. In reaching that decision, the Seventh Circuit rejected Clark's argument that his "arrest 'was involved with' federal charges. *Id.* at 405. The Seventh Circuit then rejected the argument, stating that "[i]f an agency relationship were present this might be a closer point, but Clark has no proof of agency." *Id.* The factual information that Clark now argues his appellate counsel should have raised would not change that point. The statements by Agent Hruz, the Court, and the Government do nothing to establish the actual circumstances surrounding Clark's arrest. And, while Moore may have been subject to federal charges at the time of Clark's arrest, it still does not show that the federal government "instructed the state authorities to arrest Clark or that it wanted him arrested so that it could initiate proceedings against him," as the Seventh Circuit was looking for in its agency analysis. *Id.*

31

Finally, Clark argues that there was evidence that the federal government was constraining his liberty as of October 12, 2010, at the time the federal detainer and complaint were filed with the Milwaukee County Sheriff, for example his inability to participate in work release as a result of his federal detainer. (Doc. 2 at 7-8). Even if the prevention of Clark's work release constituted a federal deprivation of his liberty—and the Court cannot find a case explicitly stating so—it is not clear when that deprivation attached so as to constitute an "arrest" under the Speedy Trial Act. (*See* Case No. 11-CR-30, Doc. 20, Ex. 4 (order from state court, dated Jan. 25, 2011, denying Clark's motion for an order dissolving the federal detainer against him)). Accordingly, even if appellate counsel was deficient in failing to point out these additional facts, Clark was not prejudiced by that failure.

The Court will not issue a certificate of appealability on this issue. The outcome of Clark's appeal would not likely have been any different, whether appellate counsel had cited *King* or provided any additional facts. *King* did not dictate a different outcome and the additional facts would not have altered the Seventh Circuit's analysis. No reasonable jurist would disagree.

F.      Failure to Pursue Multiple "Significant and Obvious Issues"

Clark's next ground for relief consists of another grab bag of issues. The Court will address each in turn.

i.      *Failure to Appeal Motion to Suppress Buccal Swabs on Basis of Lack of Probable Cause*

Clark maintains that there was no probable cause for his arrest, and that, therefore, the buccal swabs of his DNA should have been suppressed because they were taken following his arrest.

He would not have prevailed on this argument if it had been appealed. Again, the Court

can dispose of this argument quickly: Clark did not dispute that he fled from a marked squad car with its lights and sirens activated (Case No. 11-CR-30, Doc. 20, Ex. 1), which provided more than probable cause for arrest for fleeing under Wis. Stat. § 346.04(3), *see Atwater v. City of Largo Vista*, 532 U.S. 318, 354 (2001) (arrests permissible for even fine-only offenses). Furthermore, a state court commissioner later found probable cause for the fleeing offense. (Case No. 11-CR-30, Doc. 40, Ex. 1). There was probable cause for Clark's arrest, and the Seventh Circuit would not likely have disagreed.

The cases that Clark cites to the contrary are all distinguishable. *Knowles v. Iowa*, turned on the fact that the defendant *was not* arrested; Clark, on the other hand, *was* arrested. 525 U.S. 113 (1998). Moreover, no matter how strongly Clark may disagree, the "traffic stop [for fleeing] was itself an arrest on probable cause." *United States v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004) (citing *Whren v. United States*, 517 U.S. 806 (1996)). There was, therefore, no question that the police could take Clark to the station on his fleeing citation. *Garcia*, 376 F.3d at 650; *accord Atwater*, 532 U.S. at 354. Clark "was not among [the sort of driver] covered by a catch-and-release regimen." *Garcia*, 376 F.3d at 650. He had fled officers, taking them on a high speed chase. This was all ample reason to take custody of Clark. And, while Clark tries to argue that he was actually in custody on the basis of the armed robbery suspicions rather than his fleeing, that is belied by the fact that a court commissioner found probable cause for the fleeing offense within 48 hours of Clark's arrest. (Doc. 18 at 26). Clark also argues that his flight was occasioned by the officers' attempt to stop him for the armed robbery without probable cause for the stop. (Doc. 18 at 27-28 (citing, among others, *Wong Sun v. United States*, 371 U.S. 471 (1963); *Huff v. Reichert*, 744 F.3d 999, 1004-05 (7th Cir. 2014); *Llango v. Mingey*, 739 F.2d

33

1186, 1191-92 (7th Cir. 1984)). But Clark's flight was an entirely separate event; even if the initial stop was without probable cause, the flight was still illegal. Wis. Stat. § 346.04. The fleeing statute does not distinguish between legal and illegal police stops: it simply requires that any individual who has received a visual or audible signal from a traffic officer may not flee.[7] *Id.* Clark's final argument is that *United States v. Garrett*, 139 Fed. Appx. 720 (7th Cir. 2005) prohibits "red herring" arrests like the one here; the Court has reviewed that case and it does not seem to support Clark's position. All of Clark's arguments on this point fail.

The failure to challenge the motion to suppress on appeal was neither deficient nor prejudicial. Clark cannot succeed on this ground.

The Court will not issue a certificate of appealability on this issue. Clark was properly in custody when his buccal swabs were taken. Thus, this argument was clearly weaker than those raised by appellate counsel. No reasonable jurist would disagree.

### ii. *Failure to Appeal* Franks *Motion*

Clark next complains that appellate counsel should have appealed the trial court's denial of the motion he brought prior to trial, complaining that a warrant used to obtain his DNA was based on a false affidavit, and requesting a hearing on that basis pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Clark claimed that the affidavit of Milwaukee Police Detective Dale Bormann was false in the following three ways:

> (1) That a 'canvas mask' worn by robber and, by implication DNA contained thereon, was recovered from the bank. (2) His belief that robber wore mask resulted from statements of victim. (3) That DNA sample obtained from defendant would be used in a comparative analysis with the DNA profile obtained from the canvas mask recovered from bank.

---

[7] And, by extension, Clark's arguments that the statements of Jeffrey Moore were insufficient to establish probable cause (*see* Doc. 2 at 14-16) are rendered moot, because regardless of the initial reason for the stop, there was probable cause for arrest stemming from Clark's flight.

34

(Case No. 11-CR-30, Doc. 154 at 4). He went on to explain "why identified portions are false":

> (1) The alleged mask worn by the bank robber was not recovered from the bank. Rather the alleged mask was recovered from the rooftop of a garage several miles from the bank one week after the robbery. (2) Jeffery Mo[o]re, not a victim teller, induced the affiant's belief that the mask had been worn by the robber. (3) The DNA sample obtained from the defendant was not used in a comparative analysis with a DNA profile obtained from the bank. Rather it was compared to a DNA profiled obtained from the rooftop of a garage.

(*Id.* at 4-5).

The Government responded to Clark's *Franks* hearing request, and provided Det. Bormann's affidavit. (Case No. 11-CR-30, Doc. 155, Ex. 1). In that affidavit, Det. Bormann stated: (1) that he responded to the Pyramax Bank at 318 N. Water St., at 9:29 a.m., on August 18, 2010, to assist in the investigation of a robbery; (2) that in the course of the investigation, "an item of evidentiary value believed to contain biological materials for DNA testing was recovered from 318 N Water St. on August 18, 2010 at approximately 10:10 a.m. which is believed to have been touched, handled, and worn [by] the suspect who was taken into custody for this crime of robbery"; (3) that the belief is based upon the statement of a Pyramax employee, who described the robber, including his having worn a mask, and the robbery; and (4) that a suspected co-actor, Jeffrey Moore, had been taken into custody and had given a Mirandized statement implicating Clark in the robbery. (*Id.* at Par. 2).

The Government also provided an incident report prepared by ID Technician Michelle Hoffman, who reported to Pyramax Bank at 10:10 a.m. on August 18, 2010, and collected "DNA evidence from various items inside the business," specifically "6 DNA samples listed in the report." (Case No. 11-CR-30, Doc. 155, Ex. 2).

With all of that evidence, the Court denied Clark's motion. (Case No. 11-CR-30, Doc.

35

197 at 8:2-10:5). The Court found that Clark had not offered any evidence that Det. Bormann's affidavit was based upon a lie or reckless disregard for the truth. (*Id.* at 8:24-9:21).

Even if appellate counsel had asserted this argument on appeal, the Seventh Circuit would likely have rejected it. Accordingly, the failure to raise the argument was neither deficient nor prejudicial.

"The Fourth Amendment requires district courts to hold a *Franks* hearing when 'the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," if that "allegedly false statement is necessary to the finding of probable cause." *United States v. Slizewski*, 809 F.3d 382, 384 (7th Cir. 2016) (quoting *Franks*, 438 U.S. at 155-56; citing *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009)). "Because these elements are hard to prove, *Franks* hearings are rarely required." *Slizewski*, 809 F.3d at 384 (citing *Johnson*, 580 F.3d at 670; *United States v. Maro*, 272 F.3d 817, 822 (7th Cir. 2001)). Certainly, where an affidavit does not contain any errors, a hearing is not warranted. *Slizewski*, 809 F.3d at 384-85 ("And no hearing was needed here because the affidavit contains no intentional or material errors.").

There is no evidence of *any* falsity in Det. Bormann's affidavit, let alone intentional or reckless falsity, and therefore a *Franks* hearing was not necessary. To begin, none of the three items that Clark points to were actually false. First, Det. Bormann's affidavit's reference to "an item of evidentiary value believed to contain biological materials for DNA testing," (Case No. 11-CR-30, Doc. 155, Ex. 1), was true: Technician Hoffman recovered DNA evidence from the scene, a fact corroborated by her report (*see*, Case No. 11-CR-30, Doc. 155, Ex. 2). Clark argues

36

that the referenced item must have been the mask, but that is a strained reading. The only other reference to the mask in the affidavit comes from the Pyramax employee's description of the robber; she included the mask in a list of other clothes that the robber was wearing, so even by Clark's logic, the item recovered *could have* been any one of those items. Second, there is no basis whatsoever to find that, contrary to Det. Bormann's report, the Pyramax employee failed to report that the robber had been wearing a mask. (Case No. 11-CR-30, Doc. 155, Ex. 1). Third, regardless of how Clark's DNA was ultimately used, there was probable cause to obtain it in order to compare it to the other DNA evidence recovered by the technician. And, fourth, Det. Bormann's testimony at trial was fully consistent with his affidavit. At trial, Det. Bormann stated only that he was informed that an item of evidentiary value containing DNA had been recovered from the scene (Case No. 11-CR-30, Doc. 200 at 672:21-676:24); he said precisely that in his affidavit (Case No. 11-CR-30, Doc. 155, Ex. 1). So, there was nothing false in the affidavit, and there was certainly no evidence of intentional or reckless falsity.[8]

Clark complains that the Court improperly imposed a higher standard than *Franks* requires, but he is simply wrong. As already noted, to be entitled to a *Franks* hearing, Clark was required to make a "substantial preliminary showing" of a false statement made intentionally or recklessly. *Slizewski*, 809 F.3d at 384. That is all the Court required of him. (Case No. 11-CR-30, Doc. 197 at 8:2-9:4). Clark did not make *any* showing even of falsity.

For all of these reasons, there was no basis on which the Seventh Circuit would have reversed. The failure to appeal the issue was, accordingly, neither deficient nor prejudicial.

The Court will not issue a certificate of appealability on this issue. Det. Bormann's

---

[8] For this reason, the Court must also reject Clark's arguments related to the actions of other law enforcement officers to "cover up" a false affidavit. (*See* Doc. 2 at 18-21). The affidavit was not false.

37

affidavit was not false in any way. Accordingly, there was no basis for a *Franks* hearing, and this argument was doomed to fail on appeal. It certainly was weaker than those raised by appellate counsel. No reasonable jurist would disagree.

        *iii.*     *Failure to Challenge Grand Jury Proceedings*

Clark next argues that his appellate counsel should have argued on appeal that there were errors in the grand jury process, specifically that the grand jury was never presented with evidence of the FDIC-insurance status of the banks.

If appellate counsel had raised this argument on appeal, the Seventh Circuit would have rejected it. Once a grand jury has returned an indictment, the courts must generally "abstain from reviewing the evidentiary support for the grand jury's judgment." *United States v. Williams*, 504 U.S. 36, 54-55 (1992). As the Supreme Court recently stated:

> "[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,'" we have explained, "conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged. *Gerstein v. Pugh,* 420 U.S. 103, 117 (1975) (quoting *Ex parte United States,* 287 U.S. 241, 250 (1932)). And "conclusively" has meant, case in and case out, just that. We have found no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." *Costello,* 350 U.S., at 362–363 (quoting *United States v. Reed,* 27 F.Cas. 727, 738 (No. 16,134) (C.C.N.D.N.Y.1852) (Nelson, J.)). To the contrary, "the whole history of the grand jury institution" demonstrates that "a challenge to the reliability or competence of the evidence" supporting a grand jury's finding of probable cause "will not be heard." *United States v. Williams,* 504 U.S. 36, 54 (1992) (quoting *Costello,* 350 U.S., at 364, and *Bank of Nova Scotia v. United States,* 487 U.S. 250, 261 (1988)). The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.

*Kaley v. United States*, --- U.S. ----, 134 S. Ct. 1090, 1097-98 (2014). Simply put, Clark had no right to have the Seventh Circuit (or any other court) review the indictment that the grand jury returned against him on the basis of his allegations that they had not been presented with

38

required evidence. Accordingly, this argument would likely not have entitled Clark to any relief on appeal.

For this reason, the Court finds that the failure to raise this argument on appeal was neither deficient nor prejudicial.

The Court will not issue a certificate of appealability on this issue. The law on the topic is well settled: courts cannot entertain challenges to the evidence presented to a grand jury. Any challenge on this basis was, accordingly, doomed to fail on appeal and weaker than the arguments raised by appellate counsel. No reasonable jurist would disagree.

    iv.  *Failure to Appeal Sufficiency of the Evidence Argument Regarding FDIC-Insured Status of Banks*

Clark's next asserted ground for relief is that his appellate counsel was ineffective in failing to challenge the sufficiency of the Government's evidence of the FDIC-insured status of the banks that were robbed.

Any appeal on that ground would have been frivolous. The Seventh Circuit has "held that an FDIC certificate, together with a bank employee's testimony based upon personal knowledge, are sufficient to support a conviction." *United States v. Hagler*, 700 F.3d 1091, 1100 (7th Cir. 2012) (citing *United States v. Hampton,* 464 F.3d 687, 688 (7th Cir.2006); *United States v. Higgans,* 507 F.2d 808, 813 (7th Cir. 1974); *United States v. Taylor,* 728 F.2d 930, 933 (7th Cir.1984)). The Government provided precisely that proof at Clark's trial. The FDIC certificates established that each bank was insured at the time of the robbery and were admitted through the testimony of FBI Special Agent Benjamin Hruz. (Case No. 11-CR-30, Doc. 200 at 578:18-580:19). And, though Clark attacked that testimony as hearsay (and seems to continue to do so (Doc. 18 at 6-7)), the Court properly admitted the certificates under Rule 803(8) of the

Federal Rules of Evidence. Meanwhile, representatives from each bank testified that each bank was FDIC insured (Case No. 11-CR-30, Doc. 198 at 26:4-5 (Pyramax); Doc. 199 at 202:12-13 (US Bank), 261:17-18 (Bank Mutual), 290:6-7 (National City), 327:21-22 (Maritime Savings), 353:9-10 (Anchor Bank). Together, this evidence was clearly sufficient under Seventh Circuit case law, and any appeal challenging Clark's conviction on that basis would have been frivolous.

For these reasons, the failure to raise this issue on appeal was neither deficient nor prejudicial.

The Court will not issue a certificate of appealability on this issue. The Government's evidence clearly satisfied the Seventh Circuit's requirements, making any appeal frivolous. The grounds raised by appellate counsel were, therefore, clearly stronger. No reasonable jurist would disagree.

> v. *Failure to Appeal "Constructive Amendment" of Indictment*

Clark next argues that his counsel should have appealed the "constructive amendment" of the Indictment. He makes two arguments in this regard, the first relating to the charges against him under 18 U.S.C. § 924(c)(1)(A)(ii) and the second relating to the charges against him under 18 U.S.C. § 2113(d). The Court will address these two arguments separately.

> a. *"Constructive Amendment" of 18 U.S.C. § 924(c)(1)(A)(ii) Counts*

Clark's first argument regarding "constructive amendment" relates to the charges in Counts Two, Five, Seven, Nine, and Thirteen of his Indictment. (Doc. 2 at 42-43; Doc. 18 at 33-34). Those counts charged Clark with the crime of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (Case No. 11-CR-30, Doc. 1). In doing so, the counts named both Eric Griffin and Ernest Clark. Clark now argues that "a

40

crime of violence committed only by Eric Griffin and Ernest Clark is legally separable and distinct from one in which Robbin Arnold was involved." (Doc. 2 at 42). Clark cites to *United States v. Leichtnam* to support his position. (Doc. 2 at 42-43; Doc. 18 at 33-34 (citing *Leichtnam*, 948 F.2d 370 (7th Cir. 1991)). *Leichtnam* states that "[t]he possible bases for conviction are limited to those contained in the indictment.… New ones may not be added without resubmitting the indictment to a grand jury whether they are added literally, by a formal amendment to the indictment or constructively—by proof at trial of a crime not clearly and fully charged or by instructions to the trial jury which would allow a conviction on grounds not charged by a grand jury." *Id.* at 379. The *Leichtnam* court considered a situation in which the defendant was charged with "knowingly use[ing] and carr[ying] a firearm: to wit, a Mossberg rifle…" *Id.* At trial, though, the Government presented evidence of three separate guns, including the Mossberg rifle. *Id.* The trial judge also instructed the jury that it could convict the defendant on the basis of a finding that the defendant had used any firearm—not just the Mossberg rifle. *Id.* Thus, the jury was free to convict the defendant whether it found him guilty of possessing the Mossberg rifle or not. *Id.* Clark argues that a similar situation occurred here: he was charged with Eric Griffin on the brandishing charge, but the Government introduced evidence that Robin Arnold also participated.

Had this issue been raised on appeal, it would have been rejected. The concern of *Leichtnam* was that an indictment "not be *broadened*, so as to present the trial jury with more or different offenses than the grand jury charged." *Id.* at 377. But, in this case, the evidence regarding Robin Arnold did not broaden the indictment. Each challenged count charged Clark and Griffin both with brandishing a firearm on specific days, and did so by reference to both the

41

substantive statute, § 924(c)(1)(A)(ii), and the aiding and abetting statute, § 2. The counts do not specifically state *who* did or did not participate in the offenses. The Court also properly instructed the jury on aiding and abetting liability. (Case No. 11-CR-30, Doc. 201 at 761:7-15). Thus, unlike the situation in *Leichtnam*, there was no requirement that the Government prove any specific person participated with Clark. In other words, *Leichtnam* construed a situation in which the indictment required proof of the use of a specific type of weapon; the Indictment here, on the other hand, had no specificity regarding participants. Under *Leichtnam*, if the Government had named Arnold as the principal in the brandishing offenses of the Indictment,[9] it would have had to prove that Arnold, himself, actually participated as the principal to secure a conviction of Clark on those brandishing offenses. But that is not the situation here. Instead, the Indictment charged these counts generally (*i.e.*, without naming a principal), as is permissible even under *Leichtnam*, 948 F.3d at 379-380, and the Government simply offered a more specific version of events at trial. In short, there was no constructive amendment of the Indictment as related to Arnold's role, and therefore a challenge on appeal would have failed.

For these reasons, the failure to assert this constructive amendment argument on appeal was neither deficient nor prejudicial.

### b. "Constructive Amendment" of 18 U.S.C. § 2113(d) Counts

Clark next argues that Counts One, Four, Six, Eight, Twelve, and Fifteen of the Indictment—all charging him with violations of 18 U.S.C. §§ 2113(d) and 2—were constructively amended by the Court's jury instructions. (Doc. 1 at 43-45). Each of those counts specifically charged Clark with "put[ting] in jeopardy the life of the teller by *the use of a*

---

[9] The Government was not required to do so. *United States v. Petty*, 132 F.3d 373, 377-78 (7th Cir. 1997) ("We have never required the Government even to identify the principal, much less prove it was that person whom the defendant aided and abetted.").

*dangerous weapon, to wit: a handgun*." (Case No. 11-CR-30, Doc. 1 (emphasis added)). In

instructing the jury, the Court identified the fourth element of this crime as follows:

> Fourth, that in doing the above, the defendant put in jeopardy the life of any
> person by the use of a dangerous weapon *or device*. The phrase, to put in jeopardy
> the life of any person, means to knowingly do an act which exposes another
> person to risk of death. In considering this element, you must focus on actual risk
> of death created by the use of a dangerous weapon *or device*. This risk may
> include direct risk to bank employees and indirect risk through the violent
> response by a customer or the police.

(Case No. 11-CR-30, Doc. 201 at 759:22-760:5) (emphasis added). Clark argues that, by stating

"or device," rather than requiring "a dangerous weapon, to wit: a handgun," the Court

constructively amended the Indictment. (Doc. 1 at 43-45).

This argument fails; even assuming that the minor differences between the Court's jury

instructions and the Indictment's language constituted a constructive amendment, the Seventh

Circuit still would not have reversed on appeal, because the error was harmless. In *United States*

*v. Nator*, the Seventh Circuit pointed out that "even where we have found a constructive

amendment, we have not reversed if the error is harmless because the defendant was unable to

show that the outcome of his trial would have been different if the constructive amendment had

not occurred." 700 F.3d 962, 969 (7th Cir. 2012) (citing *United States v. Murphy*, 406 F.3d 857,

861 (7th Cir. 2005), which *Nator* described as "affirming where an indictment charged that a

defendant had used 'physical force,' but the jury instruction also permitted a conviction if he had

used less severe 'intimidation,' reasoning that 'the jury would have obviously reached the same

result because there was strong evidence of physical force and injury'"). There was no question

in this case—indeed all of the evidence supported—that a firearm, specifically a handgun, was

used in the robberies, precisely as charged in the original Indictment. Thus, any constructive

43

amendment, if there was one, was harmless and would not have warranted reversal on appeal. *See, e.g.*, *Murphy*, 406 F.3d at 861.

For this reason, appellate counsel's failure to raise this argument on appeal was neither deficient nor prejudicial.

The Court will not issue a certificate of appealability as to either of the "constructive amendment" issues. Both arguments, substantively, lack merit. The Government's proof and the Court's instructions covered precisely the charges against Clark in the Indictment. This argument would have failed on appeal, making it weaker than those raised by appellate counsel. No reasonable jurist would disagree.

### vi.    *Failure to Challenge Sentence on Appeal*

Clark received a sentence of 1,951 months in prison. Apparently, at oral argument, Judge Posner stated that he believed the sentence was "ridiculous." (*See* Doc. 18 at 34-35 (quoting Judge Posner comments from oral argument)).

But, even if Judge Posner believed the sentence to be ridiculous, there was no basis on which Clark could have filed a successful appeal. The problem is this: Clark was convicted of six separate brandishing charges, each of which carried mandatory consecutive minimum sentences of 300 months. 18 U.S.C. § 924(c)(1)(D)(ii). The Court imposed a presumptively-reasonable, low-end guidelines sentence of 151 months on each of the remaining counts, all of which were to run concurrent with one another. But the 300-month sentences on the brandishing charges all had to run consecutive to one another and to the 151-month sentence on the other counts. In other words, the Court lacked discretion as to 1,800 months—150 years—of Clark's sentence. There was no basis to appeal that sentence. Perhaps Clark would like to have challenged the remaining

44

151 months, but any error (and the Court cannot conceive what that error would be, nor does Clark specify) would not have made any difference to the ultimate outcome, as Clark would still have been subject to a 150 year sentence, even if the Court had sentenced him to nothing on the remaining counts. While the Court understands the concerns of both Judge Posner and Clark, its hands were bound by the mandatory nature of the sentences on the brandishing charges. There was no basis on which Clark could have filed a successful appeal.

Accordingly, the failure to appeal this issue was neither deficient nor prejudicial.

The Court will deny a certificate of appealability on this issue. The vast majority of the Court's sentence was statutorily required; the remainder made no difference. Therefore, any challenge on this basis would have failed, and the issues raised by appellate counsel were stronger. No reasonably jurist would disagree.

### vii.    Failure to Appeal on Basis of Government's "Lies"

Clark would like his appellate counsel to have challenged what he contends to have been the Government's "lies" on appeal. Of this, the Seventh Circuit actually weighed in following the Court's denial of Clark's Rule 60(b) motion:

> Clark argued in his motion that the prosecutor obtained his conviction by fraud because Clark was initially charged with armed bank robbery but the indictment was later amended to include charges for fleeing. Appointed counsel argued in Clark's direct appeal that the government should not have been able to charge crimes not included in the original detainer. Clark added the "fraud" element, but otherwise made an argument already addressed by the district court. His addition of the "fraud" element was frivolous. Thus, the district court's denial of Clark's Rule 60(b) motion was proper.

(Case No. 11-CR-30, Doc. 236 at 4). In other words, appellate counsel raised the issue on appeal, absent an allegation of fraud, which the Seventh Circuit deemed "frivolous."

Thus, appellate counsel *could not* have been deficient: he, in fact, raised the arguments

45

that Clark wanted him to, absent an argument that the Seventh Circuit rejected out of hand. This argument fails.

The Court will deny a certificate of appealability on this issue. The Seventh Circuit already, essentially, ruled on it and rejected it. It provided no basis for relief on appeal, and therefore was weaker than the arguments raised be appellate counsel. No reasonable jurist would disagree.

### viii.    Failure to Appeal Issue of Prompt Presentment

Clark next argues that appellate counsel should have appealed the denial of his motion to suppress his buccal swabs on the basis of failure to promptly present Clark to a magistrate judge as required under Rule 5 of the Federal Rules of Civil Procedure.    He could not have prevailed on this issue on appeal. This argument is foreclosed by the Seventh Circuit's finding that Clark was in state custody prior to his initial appearance. *See Clark*, 754 F.3d at 405-407. Accordingly, Rule 5 does not apply to him. *See, e.g.*, *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) ("If, instead, the person is arrested and held on state charges, § 3501(c) does not apply, and the safe harbor is not implicated. This is true even if the arresting officers (who, when the arrest is for a violation of state law, almost certainly will be agents of the State or one of its subdivisions) believe or have cause to believe that the person also may have violated federal law."). Accordingly, Clark could not have prevailed on this issue on appeal, and failure to raise the issue was neither deficient nor prejudicial.

The Court will not issue a certificate of appealability on this issue. The Seventh Circuit found that Clark was in state custody prior to his initial appearance, so the strictures of Rule 5 were not applicable to him prior to that time. This argument would have failed on appeal, making

46

it weaker than that raised by appellate counsel. No reasonable jurist would disagree.

G.    Failure to Appeal Charging Language in Indictment

Clark's final asserted ground for relief relates to the charging language in his Indictment. (*See, e.g.*, Doc. 8; Doc. 18 at 38-41). As already discussed, the Grand Jury indicted Clark on six separate counts charging violations of 18 U.S.C. § 924(c)(1)(A)(ii). (Case No. 11-CR-30, Doc. 1 (Counts Two, Five, Seven, Nine, Thirteen, and Sixteen)). Each of those counts included the following charging language: "On or about [date], in the State and Eastern District of Wisconsin,…Ernest Clark *knowingly used and brandished a firearm in furtherance of* the crime of violence charged in Count [number] of this indictment." (*Id.* (emphasis added)). Clark now argues that this was improper in light of the explicit language of 18 U.S.C. § 924(c)(1)(A), which states that "any person who, during and in relation to any crime of violence or drug trafficking crime…uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be subject to the criminal penalties that follow. In that statutory language, Clark identifies two separate crimes—(1) using/carrying a firearm during and in relation to a crime of violence and (2) possessing a firearm in furtherance of a crime of violence—and argues that, in effect, the Indictment did not charge him with either. The Government argues that Clark is raising a free-standing attack on this ground, but it appears that, to the contrary, Clark has asserted this challenge through the lens of ineffectiveness of appellate counsel. (Doc. 8 at 1 (citing *Strickland*, 466 U.S. 668)).

In any event, the outcome is the same: the argument fails, pursuant to the Seventh Circuit's decision in *United States v. Harvey*, 484 F.3d 453 (7th Cir. 2007). That case bears many similarities to this one. There, the indictment charged the defendant with "knowingly and

47

intentionally carr[ying] a firearm in furtherance of a drug trafficking crime." *Id.* at 454-55.

Pointing to that charging language, the defendant argued, on direct appeal, that the indictment failed to charge him with a federal offense, because it mixed the "carrying" language with the "in furtherance of" language, *id.* at 455—just as Clark asserts that the "use" and "brandishing" language have been improperly mixed with the "in furtherance of" language. The Seventh Circuit assessed the *Harvey* defendant's argument using a plain error standard of review, because the defendant had raised the argument for the first time on appeal. *Id.* at 455-56. In so doing, the Seventh Circuit rejected the defendant's argument. *Id.* at 456-57. The Seventh Circuit noted that the two separate parts of the statute are very similar; that the defendant was amply put on notice of the charges against him; and that the facts (established, in that case, at a plea colloquy) clearly established the defendant's guilt of any version of 18 U.S.C. § 924(c)(1). *Harvey*, 484 F.3d at 456-58 (internal citations omitted). Practically the same circumstances are present here: while the charging language was imperfect, it still provided Clark with a clear picture of the charges against him; Clark did not challenge it prior to trial; and the evidence adduced at trial clearly supported a conviction of any version of 18 U.S.C. § 924(c)(1). In short, even if appellate counsel had asserted this issue on appeal, *Harvey* would have foreclosed the argument. *Cf. United States v. Haynes*, 582 F.3d 686, 703-04 (7th Cir. 2009) ("A finding that Black possessed a firearm in furtherance of, or used a firearm during and in relation to a drug trafficking crime, would encompass a finding that he carried a firearm during and in relation to that crime"), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); *United States v. Crowder*, 588 F.3d 929, 938 (7th Cir. 2009); *United States v. Avery*, 295 F.3d 1158, 1174-76 (10th Cir. 2002).

For this reason, the Court is obliged to conclude that appellate counsel's failure to raise this argument on appeal was neither defective nor prejudicial. The Court will also deny Clark a certificate of appealability on this issue. While, to be sure, other circuits disagree with the Seventh Circuit on the substantive issue underlying this ground for relief, *see, e.g.*, *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004); *United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir. 2006), the Court finds that no reasonable jurist could debate its conclusion on the issue actually before it, specifically, whether appellate counsel was ineffective for raising the substantive issue on appeal. Therefore, a certificate of appealability should not issue on this ground.

**III.    Second Motion to Amend**

The Court must also address Clark's recently-filed motion to supplement his § 2255 motion for a second time—essentially, a motion to amend his § 2255 motion to assert a new ground for relief. (Doc. 20). Specifically, Clark requests leave to assert a new ground for relief based upon the Supreme Court's decision in *Johnson v. United States*, --- U.S. ----, 135 S. Ct. 2551 (2015).

Generally speaking, amendment of § 2255 motions is permissible: the AEDPA "allows every prisoner one fully opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds," by virtue of Rule 15(a) of the Federal Rules of Civil Procedure. *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999).

But that ability is not absolute. The Court need freely grant leave to amend only "when justice so requires." *Vitrano v. United States*, 643 F.3d 229, 234 (7th Cir. 2011) ("*Vitrano III*")

49

(quoting Fed. R. Civ. P. 15(a)(2)). This means that, in cases involving futility of amendment, for instance, the Court does not need to provide leave to amend. *See, e.g.*, *id.* (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 666 (7th Cir. 2007)); *Childress v. Walker*, 787 F.3d 433, 441 (7th Cir. 2015) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)).[10]

The futility of Clark's proposed amendment is adequate reason to deny his most recent motion to supplement. In his most recent motion to supplement, Clark argues that he is entitled to relief under *Johnson* because his bank robberies, charged under 18 U.S.C. § 2113(a), 2113(d),

---

[10]There are two other possible grounds upon which the Court could deny Clark's motion to amend his § 2255 motion.

First, the Court could deny Clark's motion for leave to supplement because Clark unduly delayed filing that motion. *See Vitrano III*, 643 F.3d at 234. Clark filed an earlier motion to supplement his § 2255 motion on August 14, 2015. At that time, he made no mention of the *Johnson* ground he now asserts, despite the facts that: (1) the Supreme Court decided *Johnson* on June 26, 2015, well more than a month before Clark filed his first motion to supplement; and (2) the Seventh Circuit held *Johnson* to be retroactive on August 4, 2015, *Price*, 795 F.3d at 734-35, also before Clark filed his first motion to supplement. The Court, therefore, believes that Clark should probably have included his *Johnson* argument in his first motion to supplement. At the very least, he should have asserted it in the intervening six months. *See, e.g.*, *Park v. City of Chi.*, 297 F.3d 606, 613 (7th Cir. 2002) (finding undue delay where plaintiff requested amendment six months after the time she should have known about a claim). With that said, however, the Court notes that delay, alone, is generally insufficient to deny a proposed amendment, *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 791 (7th Cir. 2011), and the Court has not requested briefing from the parties on the issue of whether prejudice may have resulted from Clark's delay.

Second, the Court could conceivably deem Clark's motion either an untimely or successive § 2255 motion. A motion to amend a § 2255 motion will generally not be permissible if it is filed after either the expiration of the otherwise-applicable one-year limitation period or the issuance of a final opinion on the original § 2255 motion. *See, e.g.*, 28 U.S.C. § 2255(f), (h); *Vitrano v. United States*, 721 F.3d 802, 806 (7th Cir. 2013) ("*Vitrano IV*"); *Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002)*, as amended on denial of reh'g and reh'g en banc* (May 21, 2002) (citations omitted). A petition can overcome that latter limitation, however, by establishing that the grounds he seeks to add in his amendment "relate back" to his original § 2255 motion. *Rodriguez*, 286 F.3d at 981 (citing Fed. R. Civ. P. 15(c)). It is quite possible that Clark's motion to amend does not run afoul of either the time limitation (as it asserts relief based upon *Johnson*, which was decided less than a year ago, *see* 28 U.S.C. § 2255(f)(3), and later held to be retroactive by the Seventh Circuit, *Price v. United States*, 795 F.3d 731 (7th Cir. 2015)) or the successiveness limitation (as the Court has not yet rendered decision on Clark's original § 2255 motion). And, even if the motion to amend did cause timeliness or successiveness concerns, the Court would still find that Clark's asserted new ground for relief relates back to his original challenge to his § 924(c) convictions.

and 2, cannot constitute crimes of violence under § 924(c). The amendment of Clark's § 2255 motion to include this ground would be futile for multiple reasons.

To begin, to the extent that Clark is raising this argument on its substance (as opposed to raising it under the theory of ineffective assistance of counsel), he has procedurally defaulted it by failing to raise it on direct appeal and cannot show cause therefor. *See, e.g.*, *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993) ("The failure to raise an issue on direct appeal generally bars a defendant from raising it later in a post-conviction proceeding [unless] the defendant can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal."). And, generally speaking, cause for the failure to raise an argument on direct appeal is not satisfied by the fact that an argument was unlikely to succeed (as a *Johnson*-type argument would have been at the time of Clark's direct appeal). *See, e.g.*, *Ryan v. United States,* 645 F.3d 913, 916-17 (7th Cir. 2011) ("'cause' in the formula 'cause and prejudice' means some impediment to making an argument. That the argument seems likely to fail is not 'cause' for its omission."); *Ashley v. United States*, 266 F.3d 671, 675 (7th Cir. 2001).

Meanwhile, to the extent that Clark is asserting that his counsel was ineffective for failing to raise a *Johnson*-style argument, this ground for relief would also fail. As just mentioned, a *Johnson* argument was very unlikely to have prevailed at the time, as the Supreme Court's pre-*Johnson* cases were all still effective, meaning that the issues raised by appellate counsel would clearly have been stronger.

Additionally, to the extent that Clark might be asserting that he is "actually innocent" of the § 924(c) counts by virtue of *Johnson*, that ground is not available as a stand-alone claim for relief. *See, e.g.*, *McQuiggin v. Perkins*, 569 U.S. ----, 133 S. Ct. 1924, 1931 (2013) (citing

51

*Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)); *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015).

Finally, even if the Court were to reach the merits of Clark's newly-asserted ground for relief, it would reject his position. Every decision the Court has found to have considered the issue has concluded that bank robbery and similar crimes constitute crimes of violence under the range of statutes that *Johnson*'s reasoning might affect. *See, e.g.*, *United States v. Burwell*, No. 04CR355-05 (CKK), 2016 WL 614362, at *18 (D.D.C. Feb. 16, 2016) (conviction under 18 U.S.C. § 2113(a) and (d) constitutes crime of violence under § 924(c)); *United States v. Green*, No. CR RDB-15-0526, 2016 WL 277982, at *2-3 (D. Md. Jan. 22, 2016) (same); *United States v. Mitchell*, No. 15-CR-47, 2015 WL 7283132, at *1-3 (E.D. Wis. Nov. 17, 2015) (same); *Velasco v. United States*, No. CR-08-00668-PHX-NVW, 2015 WL 8276806, at *4 (D. Ariz. Oct. 23, 2015) *report and recommendation adopted*, No. CR-08-00668-PHX-NVW, 2015 WL 8140378 (D. Ariz. Dec. 8, 2015) (same); *United States v. Strong*, No. 3:15-CR-00187-MOC, 2015 WL 6394237, at *1-4 (W.D.N.C. Oct. 21, 2015) (same); *United States v. Standberry*, No. 3:15CR102-HEH, 2015 WL 5920008, at *5-6 (E.D. Va. Oct. 9, 2015) (same); *United States v. Sexton*, No. 13-CR-20792, 2016 WL 26633, at *3 (E.D. Mich. Jan. 4, 2016) (18 U.S.C. § 2113(a) conviction constitutes crime of violence under U.S.S.G. § 4B1.2(a)(1)); *United States v. Morgan*, No. CR 14-20610, 2015 WL 9463975, at *7 (E.D. Mich. Dec. 18, 2015) (Hobbs Act robbery constitutes crime of violence under § 924(c)(3)); *United States v. Church*, No. 1:15-CR-42-TLS, 2015 WL 7738032, at *5-7 (N.D. Ind. Dec. 1, 2015) (finding it likely but not deciding that § 2113(d) constitutes a violent felony under § 924(c)); *Wood v. Maiorana*, No. 3:CV-15-1409, 2015 WL 4663267, at *6 (M.D. Pa. Aug. 6, 2015) (same). It appears that most of those courts are

52

of the opinion that armed bank robbery would clearly fall under the "force clause" or "elements clause" of § 924(c)(3)(A); precisely that can be said of Clark's conviction.[11]  Meanwhile, at least one circuit court of appeal has found that *Johnson* simply does not even impact the residual clause of § 924(c), found at § 924(c)(3)(B). *United States v. Taylor*, No. 09-5517, --- F.3d ----, 2016 WL 537444, at *35 (6th Cir. Feb. 11, 2016) (although that determination is at least somewhat in tension with the Seventh Circuit's decision in *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015), which held 18 U.S.C. § 16(b)'s identical residual clause unconstitutional in light of *Johnson*). In short, even if the Court had reason to reach the substance of Clark's *Johnson* argument, the argument is without merit.

The Court will, nonetheless, grant Clark a certificate of appealability on this issue. The Court believes that there is ample reason to find that Clark's *Johnson* argument is futile and, therefore, futile to add to his § 2255 motion. Nonetheless, in light of the great uncertainty following *Johnson*, the Court can imagine that reasonable jurists might debate the Court's ultimate resolution of the issue.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Clark's § 2255 motion. The Court will grant Clark a certificate of appealability as to the *Rosemond* issue discussed in Section II.A, *supra*, the Rule 43 issue discussed in Section II.C, *supra*, and the *Johnson* issue discussed in

---

[11]And the fact that Clark's counts of conviction also charged him with 18 U.S.C. § 2 liability, as an aider or abetter, also makes no difference to this analysis. *See, e.g.*, *United States v. Groce*, 999 F.2d 1189, 1191-92 (7th Cir. 1993) (aiding and abetting of predicate felony is same as conviction for predicate offense, itself, because aider and abettor is treated as principal); *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995) (same); *United States v. Smith*, 33 Fed. App'x 462, 466 (10th Cir. 2002) (no difference under ACCA between principals and accessories).

53

Section III, *supra*, but declines to grant a certificate of appealability as to the remaining issues.

Finally, the Court closes with information regarding Clark's options for challenging the Court's decision in this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 60 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4(a)(1)(B). This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 60-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A). It should also be noted that because this court denied a certification of appealability as to most of Clark's asserted grounds for relief, Clark may seek a certificate of appealability as to one or more of those issues from the Seventh Circuit. Fed. R. App. P. 22(b). Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Accordingly, for the foregoing reasons, the Court:

- **DENIES** Clark's § 2255 motion (Doc. 1);

- **DENIES** Clark's motion for leave to amend (Doc. 20);

54

- **GRANTS** a certificate of appealability as to the *Rosemond*, Rule 43, and *Johnson* issues and **DENIES** a certificate of appealability as to all remaining issues; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: March 3, 2016.**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

Case 2:15-cv-00726-JPG   Filed 03/04/16   Page 55 of 55   Document 21